**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HEIDI FENTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DERMARITE INDUSTRIES LLC,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Heidi Fenton (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1. This action seeks to remedy the deceptive and misleading business practices of DermaRite Industries LLC (hereinafter "Defendant") with respect to the manufacturing, marketing, and sale of Defendant's skin care, wound care, nutritional, and infection control products throughout the United States (hereinafter the "Products"):

a. 3-N-1 Cleansing Foam 7.5 oz., 12/case

b. 4-N-1 Wash Cream 4oz, 24/case

c. Clean-N-Free Bottle 7.5oz., 48/case

d. DermaCerin (lg. jar) 16oz., 24/case

e. DermaCerin tubes 3.75oz., 24/case

f. DermaDaily lotion 4oz., 96/case

g. DermaDaily lotion 7.5oz., 48/case

h. DermaDaily lotion 1000 ml. bag-n-box, 10/case

i. DermaFungal 3.75oz. tube, 24/case

j. DermaFungal 5g packets, 144/box

k. DermaKleen 1000ml. bag-n-box, 10/case

l. DermaKleen 7.5oz., 24/case

m. DermaKleen 800ml. bag-n-box, 12/case

n. DermaKlenz 8oz., 24/case

o. DermaKlenz Spray 4oz., 12/case

p. DermaMed Ointment 3.75oz. tube, 24/case

q. DermaRain 16oz., 12/case

r. DermaRain 7.5oz., 48/case

s. DermaRain 800ml. bag-n-box, 12/case

t. DermaSarra 7.5oz, 24/case

u. DermaSyn 3oz. tube, 24/case

v. DermaVantage 2oz. tube, 72/case

w. DermaVantage lotion 7.5oz, 48/case

x. DermaVantage lotion 1000ml. bag-n-box, 10/case

y. DermaVera 800ml. bag-n-box, 12/case

z. DermaVera 1000ml. bag-n-box, 10/case

aa. DermaVera 4oz, 96/case

bb. DermaVera 7.5oz. bottle, 48/case

cc. DermaVera Gallon, 4/case

dd. GelRite 1000ml, 10/case

ee. GelRite 16oz., 12/case

ff. GelRite 4oz., 24/case

gg. GelRite 800ml., 12/case

hh. Hand-E-Foam 1000ml., 6/case

ii. Hand-E-Foam 8oz., 12/case

jj. KleenFoam 1000ml., 6/case

kk. Lantiseptic Daily Care Skin Therapy 14oz Jar Case/12

ll. Lantiseptic Dry Skin Therapy 4oz Tube Case/12

mm. Lantiseptic Dry Skin Therapy 5g Packets 144/Box

nn. Lantiseptic Skin Protectant 4.5oz Jar Case/24

oo. Lantiseptic Skin Protectant 12oz Jar Case/12

pp. Lantiseptic Skin Protectant 14.2g Packets Case/144

qq. Lantiseptic Skin Protectant 4oz Tube Case/12

rr. Lantiseptic Skin Protectant 5g Packets Case/288

ss. LubriSilk lotion, 16oz 12/case

tt. McKesson Skin Protectant 4oz Tube Case/24

uu. McKesson Skin Protectant 5g Packets Case/288

vv. PeriFresh (Perineal Cleanser) 7.5oz., 48/case

ww. PeriFresh (Perineal Cleanser) gallons w/fragrance, 4/case

xx. PeriGiene 7.5oz., 48/case

yy. PeriGuard 3.5oz tube, 24/case

zz. PeriGuard 7oz tubes, 48/case

aaa. PeriGuard ointment packets 5g, 144/box

bbb. Renew 8oz shampoo/body wash, 24/case

ccc. Renew Dimethicone Skin Protectant packets 5g, 144/box

ddd. Renew Full-Body foaming cleanser 8oz, 12/case

eee. Renew PeriProtect 4oz tube 12/case

fff. Renew Skin Protectant w/ dimethicone, 12/case

ggg. Renew Skin Repair 4oz tube, 12/case

hhh. Renew Skin Repair 5g packets, 144/box

iii. Renew Skin Repair 800mL, 12/case

jjj. San-E-Foam 1000ml., 6/case

kkk. TotalBath 1000ml. bag-n-box, 10/case

lll. TotalBath 7.5oz., 48/case

mmm. TotalBath 800ml. bag-n-box, 12/case

nnn. TotalBath gallon, 4/case

ooo. TotalFoam 1000ml., 6/case

ppp. UltraSure Deodorant Pump Spray 4 oz., 24/case

qqq. Whirlbath Balance gallons, 4/case

2. Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on its packaging that the Products may increase the risk of resultant serious and life-threatening infections and sepsis due to the presence of a microbial contamination identified as Burkholderia cepecia complex ("BCC").

3. As described in further detail below, the Products contain BCC, which could lead to serious and life-threatening adverse health consequences.

4. Defendant specifically lists the ingredients in the Products on the labeling; however, Defendant fails to disclose that the Products contain, or are at the risk of containing, BCC.

5. An example of Defendant's lack of disclosure on the Products is depicted below:



6. BCC is recognized to be dangerous in that it is a group of bacteria that can cause infections. BCC can cause serious respiratory infections, especially in patients with cystic fibrosis or other chronic lung disease.[1]

7. Consumers like the Plaintiff trust manufacturers such as Defendant to sell products that are safe and free from harmful known substances, including BCC.

8. Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that the skin care, wound care, nutritional, and infection control products they purchase will not contain, or risk containing, any knowingly harmful substances that cause disease.

9. Unfortunately for consumers, like Plaintiff, the Products they purchased contain BCC.

10. In fact, Defendant recently conducted a product recall on August 8, 2025[2], and then an expanded recall on August 27, 2025[3] (collectively as the "Recall").

11. Independent testing confirmed and demonstrated the presence of BCC in the Products.

12. Defendant is using a marketing and advertising campaign that omits from the ingredients lists that the Products contain BCC. The presence of BCC is material to reasonable consumers. The presence and levels of BCC was solely within the possession of Defendant, and consumers could only obtain such information by conducting testing by sending the Products off to a laboratory for extensive testing. This omission leads a reasonable consumer to believe they

---

[1] https://www.cdc.gov/b-cepacia/about/index.html
[2] https://dermarite.com/voluntary-recall/ (last visited on September 11, 2025)
[3] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/dermarite-industries-expands-voluntary-nationwide-recall-due-potential-burkholderia-cepacia (last visited on September 11, 2025)

are not purchasing a product with a known bacterium when in fact they are purchasing a product contaminated with BCC.

13. Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves. As such, a reasonable consumer reviewing Defendant's labels reasonably believes that they are purchasing a product that is safe for use on the skin and does not contain any harmful bacterium.

14. Indeed, consumers expect the ingredient listing on the packaging and labels to accurately disclose the ingredients within the Products and the presence or levels of BCC within the Products. Thus, reasonable consumers would not think that Defendant is omitting that the Products contain, or are at risk of containing, BCC.

15. Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products do contain, or risk containing, BCC, which is dangerous to one's health and well-being. Nevertheless, Defendant does not list or mention BCC anywhere on the Products' packaging or labeling.

16. Plaintiff and Class Members relied on Defendant's misrepresentations and omissions of the safety of the Products and what is in the Products when they purchased them.

17. Consequently, Plaintiff and Class Members lost the entire benefit of their bargain when what they received was a skin care, wound care, nutritional, or infection control product contaminated with a known bacterium that is harmful to consumers' health.

18. That is because Defendant's Products contain, or are at risk of containing, a known dangerous substance have no value.

19. As set forth below, skin care, wound care, nutritional, or infection control products, such as Defendant's Products, are in no way safe for use and are entirely worthless.

20. Alternatively, Plaintiff and Class Members paid a price premium for the Products based upon Defendant's marketing and advertising campaign including its false and misleading representations and omission on the Products' labels. Given that Plaintiff and Class Members paid a premium for the Products, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

21. Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Defendant also breached and continues to breach its warranties regarding the Products.

22. Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

23. Defendant manufactures, markets, advertises, and sells skin care, wound care, nutritional, or infection control products.

24. Consumers have become increasingly concerned about the effects of ingredients in products that they use on their skin. Companies, such as Defendant, have capitalized on consumers' desire for skin care, wound care, nutritional, and infection control products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

25. Prior to the Recall, when Plaintiff and many consumers purchased the Products, there were no public disclosures regarding the presence or amounts of BCC in the Products.

26. Consumers lack the scientific knowledge and meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as BCC, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and

honestly report what the Products contain or are at risk of containing on the Products' packaging or labels.

27. The Products' packaging does not identify BCC. Indeed, BCC is not listed in the ingredients section, nor is there any warning about the inclusion (or even potential inclusion) of BCC in the Products. This leads reasonable consumers to believe the Products do not contain, and are not at risk of containing, BCC.

28. However, the Products contain, or are at risk of containing, BCC.

29. BCC is a group of bacteria that can cause infections. BCC can cause serious respiratory infections, especially in patients with cystic fibrosis or other chronic lung disease common bacterial disease that affects the intestinal tract. BCC is commonly found in soil and water and may be contracted by exposure from water, soil, or watery environments, contact with contaminated surfaces, contact with contaminated equipment; and person-to-person transmission.4

30. Independent testing confirmed and demonstrated the presence of BCC in the Products.

31. Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing skin care, wound care, nutritional, or infection control products for more than 25 years, including producing and manufacturing the Products.

32. Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Products and possesses unique and superior knowledge regarding the manufacturing process of the Products, the manufacturing process of the

[4] https://www.cdc.gov/b-cepacia/about/index.html

ingredients and raw materials the Products contain, and the risks associated with those processes, such as the risk of BCC contamination.

33. Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its Products. Such knowledge is not readily available to consumers like Plaintiff and Class Members.

34. Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Products.

35. Defendants' omission regarding BCC prevents consumers from obtaining full and complete information regarding the total amount of BCC they are being exposed to in a single day and over the course of time. This inhibits consumers' decision-making regarding their cumulative exposure to BCC.

36. Therefore, Defendant's false, misleading, and deceptive omissions regarding the Products containing BCC are likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

37. Defendant's misrepresentations and omissions were material and intentional because people are concerned about what is in the products that they ingest. Consumers such as Plaintiff and the Class Members are influenced by the marketing and advertising campaign, the Products labels, and the listed ingredients. Defendant knows that if they had not omitted that the Products contained BCC, then Plaintiff and the Class would not have purchased the Products at all.

38. Through its deceptive advertising and labeling, Defendant has violated, inter alia, the UTPCPL by: a) putting upon an article of merchandise, bottle, wrapper, package, label, or other thing containing or covering such an article, or with which such an article is intended to be

sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article which, to its knowledge, is falsely described or indicated upon any such package or vessel containing the same, or label thereupon, in any of the particulars specified.

39. Consumers rely on marketing and information in making purchasing decisions.

40. By omitting that the Products include BCC on the labels of the Products throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase a product with a harmful group of bacteria.

41. Defendant's deceptive representation and omission are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

42. Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

43. Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

44. In making the false, misleading, and deceptive representations and omissions described herein, Defendant knows and intended that consumers would pay a premium for a product marketed without BCC over comparable products not so marketed.

45. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that they:

a. Paid a sum of money for Products that were not what Defendant represented;

b. Paid a premium price for Products that were not what Defendant represented;

c. Were deprived of the benefit of the bargain because the Products they purchased was different from what Defendant warranted;

d. Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented;

e. They used a substance that was of a different quality than what Defendant promised; and

f. Were denied the benefit of the properties of the Products Defendant promised.

46. Had Defendant not made the false, misleading, and deceptive representation and omission, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

47. Plaintiff and the Class Members paid for Products that do not contain BCC. Since the Products do indeed contain BCC, a harmful group of bacteria, the Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

48. Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

49. Plaintiff and Class Members read and relied on Defendant's representation about the benefits of using the Products and purchased Defendant's Products based thereon. Had Plaintiff and Class Members known the truth about the Products, i.e., that it contains a harmful group of

bacteria (i.e. BCC), they would not have been willing to purchase it at any price, or, at minimum would have paid less for it.

## JURISDICTION AND VENUE

50. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of Pennsylvania and Defendant DermaRite Industries LLC is a citizen of New Jersey; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

51. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of Pennsylvania, contracts to supply goods within the state of Pennsylvania, and supplies goods within the state of Pennsylvania.

52. Venue is proper because Plaintiff and many Class Members reside in the Western District of Pennsylvania, and throughout the state of Pennsylvania. A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

### I. Plaintiff

53. Plaintiff Heidi Fenton is a citizen and resident of Elk County, Pennsylvania. During the applicable statute of limitations period, Plaintiff purchased and used Defendant's Products that contained BCC, including Products that were subject to the Recall. More specifically, during the class period, and before the Recall and Plaintiff was aware of the presence or potential presence of BCC in the Products, Plaintiff purchased Renew Skin-Repair Cream online via Amazon from her home in Elk County, Pennsylvania during the Class Period.

54. Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff would not have been willing to purchase the Products. Plaintiff purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products. The Products Plaintiff received were worthless because they contain the known harmful substance, BCC. Alternatively, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**II. Defendant**

54. Defendant, DermaRite Industries LLC is a New Jersey limited liability company with its principal place of business in North Bergen, New Jersey.

55. Defendant manufactures, markets, advertises, and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

## CLASS ALLEGATIONS

56. Plaintiff brings this matter on behalf of herself and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

57. The Class is defined as:

> All consumers who purchased the Products anywhere in the United States during the Class Period.

58. Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of Pennsylvania at any time during the Class Period ("Pennsylvania Subclass").

59. The Class and Pennsylvania Subclass shall be referred to collectively throughout the Complaint as the Class.

60. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

61. Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

62. Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c. Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

d. Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public; and

e. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

63. Typicality: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

64. Adequacy: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims are common to all members of the Class, she has a strong interest in vindicating his rights, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

65. Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

66. Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i. It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase their Products.

67. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### 73 Pa. Stat. Ann. § 201-1, *et seq.*
### (On Behalf of Plaintiff and the Pennsylvania Subclass)

68. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

69. The UTPCPL was created to protect Pennsylvania consumers from fraudulent or deceptive business practices.

70. Defendant has knowingly engaged in deceptive, unconscionable, unfair, false, fraudulent and misleading commercial practices, including misleading omissions of material fact,

in connection with the marketing, promotion and sale of the Products misleadingly, inaccurately, and deceptively misrepresenting their safety and failing to disclose the dangers caused by BCC.

71. Plaintiff and the Class justifiably relied on Defendant's unlawful conduct in purchasing the Products for personal purposes and suffered ascertainable losses of money or property as the result of the act or practice declared unlawful by 73 Pa. Stat. Ann. § 201-1, *et seq*. Indeed, Plaintiff and the Class have been injured inasmuch as they purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff and Class Members received less than what they bargained and paid for.

72. Plaintiff and the Class acted as reasonable consumers would have acted under the circumstances and would not have purchased the Products had they known the truth.

73. Accordingly, pursuant to the aforementioned statutes, Plaintiff and the Class are entitled to recover their actual damages, which can be calculated with a reasonable degree of certainty using sufficiently definitive and objective evidence. Those damages are: (a) the difference between the values of the Products as represented (their prices) paid and their actual values at the time of purchase ($0.00), or (b) the cost to replace the Products, and (c) other miscellaneous incidental and consequential damages.

74. In addition, given the nature of Defendant's conduct, Plaintiff and the Class are entitled to recover all available statutory, exemplary, treble, and/or punitive damages, costs of suit, and attorneys' fees based on the amount of time reasonable expended and equitable relief necessary, and all such other relief as the Court deems proper.

**<u>SECOND CAUSE OF ACTION</u>**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and the Class)**

75. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

76. Defendant provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are safe for use and do not contain BCC.

77. Defendant omitted that the Products contain a known group of bacteria that can cause infections from its ingredients labeling. This omission would lead reasonable consumers to believe that the Products did not contain a known bacterium, when in fact, the Products were contaminated with BCC as stated herein.

78. The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

79. These affirmations of fact became part of the basis for the bargain and were material to Plaintiff and Class Members' transactions.

80. Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

81. Defendant's representations and written warranty constitute an express warranty pursuant to U.C.C. § 2-313.[5]

[5] All fifty States, the District of Columbia, and Puerto Rico have codified and adopted U.C.C. § 2-313: Ala. Code § 7-2-313; Alaska Stat. § 45.02.313; Ariz. Rev. Stat. Ann. § 47-2313; Ark. Code. Ann. § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. Ann. § 42a-2-313; 6 Del. Code. § 2-313; D.C. Code. § 28:2-313; Fla. Stat. Ann. § 672.313; Ga. Code. Ann. § 11-2-313; Haw. Rev. Stat. § 490:2-313; Idaho Code § 28-2-313; 810 Ill. Comp. Stat. Ann. 5/2-313; Ind. Code Ann. § 26-1-2-313; Kan. Stat. Ann. § 84-2-313; Ky. Rev. Stat. Ann. § 355.2-313; 11 Me. Rev. Stat. Ann. § 2-313; Md. Code. Ann. § 2-313; Mass. Gen. Law Ch. 106 § 2-313; Mich. Comp. Laws Ann. § 440.2313; Minn. Stat. Ann. § 336.2-313; Miss. Code Ann. § 75-2-313; Mo. Rev. Stat. § 400.2-313; Mont. Code Ann. § 30-2-313; Nev. Rev. Stat. U.C.C. § 104.2313; N.H. Rev. Ann. § 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. Ann. § 25-2-313; N.D. Stat. § 41-02-313; Ohio Rev. Code Ann. § 1302.26; Okla. Stat. tit. 12A § 2-313; Or. Rev. Stat. § 72.3130; 13 Pa. C.S. § 2313; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Stat. §

82. Defendant knowingly breached the express warranties by including BCC in the Products sold to Plaintiff and the Class without properly notifying them of their inclusion in the Products.

83. Within a reasonable time after it knew or should have known, Defendant did not change the Products' label to include BCC in the ingredients list.

84. Defendant thereby breached the warranty.

85. As a direct and proximate result of Defendant's breach of the express warranties, Plaintiff and Class members have been injured and sustained damages.

86. Defendant has actual notice of the warranty claims alleged herein due to its recall of the Products.

**THIRD CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(On Behalf of Plaintiff and the Class)**

87. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

88. The sale of the Products created an implied warranty of merchantability pursuant to U.C.C. § 2-314.[6]

57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code Ann. § 2-313; Utah Code Ann. § 70A-2-313; Va. Code § 8.2-313; Vt. Stat. Ann. 9A § 2-313; W. Va. Code § 46-2-313; Wash. Rev. Code § 62A 2-313; Wis. Stat. Ann. § 402.313; and Wyo. Stat. § 34.1-2-313.

[6] All fifty States, the District of Columbia, and Puerto Rico have codified and adopted U.C.C. § 2-314: Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code. Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code. § 2-314; D.C. Code. § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Kan. Stat. Ann. § 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Art. 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code. Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75-2-314; Mo. Rev. Stat. § 400.2-314; Mont. Code Ann. § 30-2-314; Nev. Rev. Stat. U.C.C. § 104.2314; N.H. Rev. Ann. § 382-A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2-314; Utah Code Ann. § 70A-2-314; Va.

89. Defendant, as the manufacturer, marketer, and distributor, impliedly warranted that the Products are merchantable as skin care, wound care, nutritional and infection control products.

90. Plaintiff and Class Members purchased the Products relying on Defendant's skill and judgment in properly manufacturing, packaging and labeling the Products.

91. Defendant breached the warranty implied in the contract for the sale of the Products because they could not "pass without objection in the trade under the contract description," the Products were not "of fair average quality within the description," were not "adequately contained, packaged, and labeled as the agreement may require," and did not "conform to the promise or affirmations of fact made on the container or label." *See* U.C.C. § 2-314(2) (listing requirements for merchantability). As a result, Plaintiff and Class Members did not receive the goods as impliedly warranted by Defendant to be merchantable.

92. Defendant knowingly breached the implied warranties by including BCC in the Products sold to Plaintiff and the Class without properly notifying them of their inclusion in the Products.

93. Within a reasonable time after it knew or should have known, Defendant did not change the Products' label to include BCC in the ingredients list.

94. As a direct and proximate result of Defendant's breach of the implied warranties, Plaintiff and Class members have been injured and sustained damages.

95. Defendant has actual notice of the warranty claims alleged herein due to its recall of the Products.

**FOURTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

---

Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314; and Wyo. Stat. § 34.1-2-314.

96. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

97. Defendant represented to Plaintiff and Class members that the Products were safe and merchantable.

98. The Products failed to conform to Defendant's representations and were therefore of a substantially lesser quality and value than Defendant represented.

99. Defendant knew or should have known that the Products could not conform to their representations because of the contamination with BCC.

100. Defendant mispresented, concealed, and omitted material information concerning the contamination with BCC.

101. The facts mispresented, concealed, and omitted by Defendant are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Products or pay a lower price.

102. Defendant mispresented, concealed, and omitted material information in order to induce Plaintiff and Class members to purchase the Products at a substantially higher price than what they would otherwise have paid.

103. Plaintiff and Class members reasonably and justifiably relied on Defendant's representations and advertisements when purchasing the Products.

104. Plaintiff and Class members would not have purchased the Products if they knew that is was contaminated and unsafe, or they would have only paid substantially less.

105. Plaintiff and Class members conferred substantial benefits on Defendant by purchasing contaminated Products at a premium without receiving a product that conformed to Defendant's representations.

106. Defendant knowingly and willingly accepted and enjoyed these benefits.

107. Defendant's retention of these benefits would be inequitable because Defendant obtained benefits to the detriment of Plaintiff and Class members when Plaintiff and Class members did not obtain their promised benefits.

108. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members are entitled to restitution.

**FIFTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**(On Behalf of Plaintiff and the Class)**

109. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

110. Defendant represented that the Products are safe for their principal uses as facial cleansers, moisturizers, disinfectants for wound care, and other skincare purposes. However, Defendant failed to disclose that the Products are not safe and use of the Products could cause infection from BCC.

111. At the time Defendant made these representations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

112. Defendant had a duty to make truthful representations about the Products because it was reasonably foreseeable that consumers would reasonably rely on Defendant's material representations about the Products.

113. Defendant negligently misrepresented material facts about the safety of the Products.

114. The negligent misrepresentations made by Defendant, upon which Plaintiff and the Class reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and the Class to purchase the Products.

115. The negligent actions of Defendant caused damage to Plaintiff and the Class, who are entitled to damages and other legal and equitable relief as a result.

**SIXTH CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT**
**(On Behalf of Plaintiff and the Class)**

116. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

117. Defendant concealed and failed to disclose on the Products' packaging and labeling the material fact the Products contained BCC, and that the Products were not safe or healthy for use.

118. Defendant knew or should have known that BCC is dangerous, and concealing this known fact is detrimental to the consumer.

119. Defendant had a duty to disclose that the Products were contaminated with BCC, but, Defendant did not make this disclosure.

120. Plaintiff and the Class all paid a premium for the Products based upon the way they were represented as safe and healthy for use on the skin, which did not include disclosure of the presence of BCC. Products that are contaminated with BCC are worth substantially less to a reasonable consumer.

121. Defendant had superior knowledge or means of knowledge available to it and knew that Plaintiff and Class Members would rely upon the representations and omissions of Defendant

regarding the quality and ingredients of its Products. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains BCC, especially at the point of sale.

122. Defendant's concealment was material and intentional because a reasonable consumer would be concerned with what is in the products that they are applying to their skin and, in some cases, applying to open cuts and wounds. Consumers reasonably rely on the ingredients listed, as well as any warnings (or the lack thereof) on the products they buy.

123. Defendant knew that if it had not omitted that the Products contained BCC, then Plaintiff and the Class would not have agreed to pay a premium price for the Products, or would not have purchased the Products at all.

124. Defendant's concealment misled Plaintiff and the Class as to the true nature of what they were buying and applying to their skin and, in some cases, open cuts and wounds.

125. Defendant fraudulently concealed that the Products contained BCC.

126. Consequently, Plaintiffs and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

a. For an order certifying the Class, appointing Plaintiff as Class Representative, and appointing the law firms representing Plaintiff as counsel for the Class;

b. For compensatory, punitive, statutory, and treble damages in an amount to be determined at trial;

c. For an order enjoining Defendant's unlawful conduct, to establish a blood testing program for Plaintiff and the Class, as well as to establish a medical monitoring protocol for Plaintiff and the Class to monitor the individual health and diagnose at an early stage any ailments associated with exposure to BCC;

d. Payment of costs and expenses of suit herein incurred;

e. Both pre-and post-judgment interest on any amounts awarded;

f. Payment of reasonable attorneys' fees and expert fees;

g. Such other and further relief as the Court may deem proper.

Dated: September 11, 2025

Respectfully submitted,

*/s/ Charles E. Schaffer*

Charles E. Schaffer
Nicholas J. Elia
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
cschaffer@lfsblaw.com
nelia@lfsblaw.com

Jason P. Sultzer, Esq.
Scott E. Silberfein, Esq.
**SULTZER & LIPARI, PLLC**
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Tel: (845) 483-7100
sultzerj@thesultzerlawgroup.com
silberfeins@thesultzerlawgroup.com

*Counsel for Plaintiff and the Proposed Class*

** Pro hac vice forthcoming*